FILED: JUNE 12, 2008
08CV3394
JUDGE ZAGEL
MAGISTRATE JUDGE COX
NF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

IVAN EBERHARDT,                    *

      Petitioner,            *                    Civil No.

v.                                 *                    Orig. Crim. No. 98-CR-946

UNITED STATES OF AMERICA, *

      Respondent.            *

\* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255

As a matter of introduction, Petitioner respectfully submits that the events which transpired in the instant case constitute a denial of Petitioner's Due Process rights, as guaranteed by the Fifth Amendment to the United States Constitution, and his right to effective assistance of counsel as guaranteed by the Sixth Amendment. In short, the Petitioner submits that his sentence in the instant case should be vacated in light of these constitutional violations. In the alternative, and at the very least, the Petitioner deserves an evidentiary hearing to present these issues as well as supporting evidence.

### STATEMENT OF ISSUES UNDER CONSIDERATION

Petitioner respectfully requests that this Court adjudicate the following issues of law as it considers the Petitioner's Motion to Vacate, Set Aside or Correct Judgment pursuant to 28 U.S.C. §2255:

***(a) Fifth Amendment Due Process Abridgment***: Petitioner's conviction was based upon (a) a defective indictment, (b) prosecutorial misconduct including perjured testimony by a government informant, ( c) and insufficient evidence. In addition, Petitioner's sentence was

tainted in that its calculation and reliance on the unconstitutionally applied Sentencing Reform Act of 1984 violated Petitioner's Fifth Amendment rights.

(b) **Sixth Amendment Right to Counsel Abridgment**: Petitioner's conviction and sentence should be reversed as Petitioner did not receive effective assistance of counsel during the trial, sentencing, and appellate phases of the underlying criminal proceedings.

( c) **Actual Innocense:** Petitioner's conviction violates the provisions of the Constitution and the Laws of the United States as the Petitioner is actually innocent of the charged conduct.

(d) **Evidentiary Hearing**: Petitioner is entitled to an evidentiary hearing on these issues.

## JURISDICTION

The jurisdiction of this post-conviction remedy, as well as the scope of its application, is established within the statutory framework of 28 U.S.C. §2255. Specifically, a prisoner in custody may move the court that imposed the sentence to vacate, set aside, or correct a conviction or sentence imposed in violation of the United States Constitution or any of the laws of the United States. *See*, Davis v. United States, 417 U.S. 333, 41 L.Ed.2d 109, 94 S.Ct. 2298 (1974) A motion by a federal prisoner for postconviction relief under 28 U.S.C. §2255 is subject to a one-year time limitation that generally runs from "the date on which the judgment of conviction becomes final." Clay v. United States, 537 U.S. 522, 524, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003) (quoting 28 U.S.C. §§ 2255(1)). Although the start of the limitations period can be delayed if the right asserted by the defendant is one that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, see 28 U.S.C. §§

2255(3), Petitioner does not assert such a right. The limitations period therefore runs from the date his conviction became final.

Petitioner's conviction was reviewed by the Seventh Circuit Court of Appeals and a writ of certiorari was requested to the United States Supreme Court. The writ of certiorari was denied on June 18, 2007. Eberhart v. United States, 127 S. Ct. 2987, 168 L. Ed. 2d 705, 2007 U.S. LEXIS 7754 (2007) He therefore has until June 18, 2008 to file his habeas petition. United States v. Marcello, 212 F.3d 1005 (7th Cir. 2000) (Defendant has until the close of business on the anniversary date of the certiorari denial to file a 2255 motion, even when the intervening period includes a leap year day.)

Petitioner is presently in the custody of the Attorney General of the United States, currently serving his 135 month term of incarceration at FCI-Schuylkill, Minersville, Pennsylvania.


## ARGUMENTS OF LAW

## I. CAUSE AND PREJUDICE

A motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 must allege one of three bases as a threshold standard for sustaining such a motion. These bases are:

(1) An error of constitutional magnitude;

(2) A sentence imposed outside the statutory limits;

(3) An error of fact or law which was so fundamental as to render the entire proceedings invalid.

United States v. Addonizio, 442 U.S. 178 (1979)

In the instant matter, errors of both constitutional magnitude as well as fundamental errors of fact and law occurred of such a nature that the entire conviction and sentencing proceedings lacked the minimally requisite due process integrity established in the Federal Judiciary. As indicated below, sufficient facts are present and can be shown in an evidentiary hearing to reflect that this standard was not met.

Petitioner seeks to vacate and set aside his conviction and sentence due to errors implicating both the Fifth and Sixth Amendments to the U.S. Constitution. But for these abridgments, Petitioner would not have suffered the imposition of a criminal conviction unsupported by law and based on a flawed criminal justice process. In sum, the trial, sentencing, and appellate review phases of Petitioner's criminal proceedings present the "'exceptional circumstances" which underscore the need for collateral relief, as addressed by the Supreme Court in <u>Bowen v. Johnston</u>, 306 U.S. 19, 27, 83 L. Ed. 455, 59 S. Ct. 442 (1939).

In all cases, when such errors occur and actual prejudice results, 28 U.S.C. §2255 provides for collateral review. *See* <u>United States v. Frady</u>, 456 U.S. 152 (1982) To be successful in a collateral review under §2255, a party must show a threshold causal event and prejudice to the defendant. As indicated herein, both cause and prejudice are present in this case.


**II    PETITIONER'S CONVICTION WAS OBTAINED NOTWITHSTANDING A FLAWED INDICTMENT THAT FAILED TO PLACE THE PETITIONER ON NOTICE AS TO THE ALLEGED CRIMINAL CONDUCT, AND WHICH WAS OBTAINED THROUGH PROSECUTORIAL MISCONDUCT INCLUDING PERJURED TESTIMONY BEFORE THE GRAND JURY. ADDITIONALLY, THE CONVICTION WAS OBTAINED THROUGH A JURY VERDICT WHICH FAILED TO INCORPORATE AND DETERMINE, BEYOND A REASONABLE DOUBT, ALL ELEMENTS OF THE OFFENSE OF CONVICTION.**

Petitioner contends that the Indictment under which he was convicted was fatally flawed, because (a) it failed to put the Petitioner on notice as to the alleged criminal conduct; and (b) was obtained through prosecutorial misconduct and perjured testimony. In furtherance of these flaws, the jury verdict failed to incorporate and determine, beyond a reasonable doubt, all elements of the offense of conviction, thus invalidating the ultimate conviction .

### *The Law*

The Sixth Amendment requires that a defendant be informed of the nature and cause of the accusation. The Supreme Court has stated that one of the protections which an indictment is intended to guarantee is measured by "whether the indictment contains the elements of the offense intended to be charged and sufficiently apprizes the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046 (1962). As such, the indictment must allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000); Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827 (1999); United States v. Horton, 676 F.2d 1165 (7th Cir. 1982).

The failure to include each and every essential element of an offense renders an indictment constitutionally defective. *See*, Dunn v. United States, 442 U.S. 100, 99 S.Ct. 2190 (1979); United States v. Horton, *id.*

### The Indictment

The Petitioner was charged with two counts, the first count being a violation of 21 U.S.C. §846, conspiracy to possess with intent to distribute cocaine, and the second count (for which Petitioner was acquitted) being a substantive count of possession of approximately two kilograms of cocaine in violation of 21 U.S.C. 841(a)(1).®. 111, 137)

### FIRST DEFECT: VAGUENESS AND LACK OF NOTICE

The first defect in the indictment lies in its lack of clarity to place the Petitioner on notice as to the alleged criminal conduct. An indictment is only sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. United States v. Bailey, 444 U.S. 394, 414, 100 S. Ct. 624, 636, 62 L. Ed. 2d 575 (1980), quoting Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L. Ed. 2d 590 (1974); United States v. L'Hoste, 609 F.2d 796, 800 (5th Cir.), cert. denied, 449 U.S. 833, 101 S. Ct. 104, 66 L. Ed. 2d 39 (1980). The subject indictment does not.

It is well established in our national jurisprudence that in order for an indictment to notify adequately the defendant of the nature of the charges against him, "we require at a minimum that it provides some means of pinning down the specific conduct at issue." United States v. Smith, 230 F.3d 300, 306 (7th Cir. 2000) The indictment narrates that the Petitioner, together with individuals known and unknown to the grand jury, conspired to possess with the intent to distribute cocaine. Who are these individuals? That obvious first question is fundamental for the Petitioner to prepare and maintain a defense to this onerous charge. Were they informants? Purchasers? Sellers? Or were

those unknown individuals truly individuals who, as a matter of law, could be co-conspirators? Without this information, Petitioner was unable to be fully informed sufficiently to defend against the charged offense. And as a matter of law, an indictment is deficient if it does not provide enough factual details sufficiently to appraise the defendant of what he must be prepared to meet. United States v. Abu-Shawish, 507 F.3d 550 (7th Cir. 2007)

### SECOND DEFECT: LACK OF AGREEMENT

A legally sufficient agreement sits at the foundation of a charge of conspiracy. Petitioner's indictment fails to allege an agreement. Petitioner knew that his alleged co-conspirator could not have been Charles Bolden, the only other individual mentioned by name in the indictment, for he was, as alleged by the Government, at best a government informant/purchaser of cocaine from the Petitioner. Under the well-established rule of Sears v. United States, 343 F.2d 139 (5th Cir. 1965), an agreement with a government informant cannot constitute a criminal conspiracy. See, United States v. Spotts, 851 F.2d 890 (7th Cir. 1988) Yet it is Mr. Bolden who is the sole person mentioned in the indictment.[1] The indictment against the Petitioner is flawed in failing to provide either the names, or at least the circumstances creating the other co-conspirators supporting the allegations of an agreement between parties. As a charging instrument, except for facts associated with the Petitioner and the government informant, it improperly and unconstitutionally provides only conclusionary opinions with no specifics to place the Petitioner on notice of the charges against which he must defend. See, United States v. Outler, 659 F. 2d 1306 (5th Cir. 1981)(failure of an

---

[1]In order to understand fully Bolden's criminal involvement, attention is directed to the superseding indictment filed against Bolden in his case, United States v. Charles Bolden, Case No. 98 CR 936, USDC, ND Ill, which charging document was never disclosed to Judge Zagel.

indictment to set forth all elements of an offense violates the protections of the Fifth Amendment for grand jury determination of probable cause as to all elements and violates the Sixth Amendment protection requiring that every criminal defendant be informed of the full nature and cause of the accusation.)

The indictment failed to be clear and failed to specifically state the essential facts constituting the offense charged. It failed to allege properly and essentially the foundation of a conspiracy or agreement between proper parties available to form a conspiracy. Further, the indictment failed to allege that the Petitioner knew of the conspiracy, and of its illegal objective, and failed to allege that he agreed to participate in its achievement. United States v. Albarran, 233 F.3d 972 (7th Cir. 2000)

Without a clear understanding of the conspiracy charge against him, who he conspired with and for what, Petitioner could not be informed of the full nature of the cause against him. Such a violation of his Fifth Amendment right provides the cause "prong" required in a collateral proceeding. The second prong, that of prejudice, is reflective in the fact that no defense was, nor could have been, presented to address the conspiracy as the Petitioner had no idea who he had conspired with. See, United States v. Gallardo, 497 F.3d 727, 737 (7th Cir. 2007); United States v. Zarnes, 33 F.3d 1454 (7th Cir. 1994)

### THIRD DEFECT: OBTAINED THROUGH PERJURY

No collateral review of Petitioner's conviction can occur without an amazement at the extent of the perjured testimony presented to the grand jury. Predominately through the testimony of Charles Bolden, DEA Agent Dan Foley, and DEA Agent Robert Glynn, Federal prosecutors abused the grand jury process by allowing unchecked the testimony of these witnesses.

It is apparent from the record and continuing sworn statements that Charles Bolden is confused and challenged by the truth. After weaving a web of untrue statements in exchange for his overly lenient sentence, he has a multitude of experiences in presenting false testimony. His primary goal in everything he said was in minimizing the consequences of his criminal activity.

> . . . the Government conduct was of such a nature, that required Petitioner [Bolden] "to come up with somebody", or everything was on me, including facing the mandatory/minimum sentence. Petitioner was unaware that two kilos doesn't come under such a sentence. The government insisted that they knew that five or more kilos from a supplier would allow me to receive the Governments promise of two and one half years. Petitioner was reacting out of the fear of being imprisoned away from his young daughters for many years and therefore acted in the "heat of the moment" and provided the Government with what they wanted to hear, at that moment in time. I therefore named IVAN EBERHARDT because he was the first name that came to my mind. I can only state that if it was not for the Governments threatening me with the mandatory/minimum I would not have just given them a name. I'm very sorry for my actions, but I was very scared.

Bolden v. United States, Case # 1:03-cv-01070, USDC ND Ill, 2255 Motion, page 43

Because of Bolden's consistent with the truth and in light of the unreliability of his self-serving, conflicting statements, the Government decided not to use his testimony at trial.

The extent of the perjuries are pervasive and limitations to space herein burden Petitioner to outline all of the relevant and material falsehoods made by the Government witnesses in obtaining its indictment against the Petitioner. As indicated below, an evidentiary hearing is warranted to review these lies and perjured testimonies in light of the impact such statements had in the Government obtaining an indictment against the Petitioner. Some examples of untrue or conflicted testimony include:

- On December 22, 1998, Agent Foley issued an affidavit to support the issuance of a criminal complaint against Petitioner. This affidavit is at variance with what DEA Agent Glynn stated under oath at trial.

- In Paragraph 11 of the affidavit, Agent Foley testifies that Bolden asked the Petitioner if he could get two more kilos of cocaine. According to the affidavit, Petitioner's response was that he wanted a face to face meeting. First of all, the tape recordings reflect no such request. Secondly, the phrase "face to face" was not on the recording but was augmented by the DEA agents into the transcript. The agents augmented other matters into the transcripts of the taped meetings which were added into the record as well. These discrepancies and variances can easily be outlined in an evidentiary hearing as the entire conversations were taped.

- In Paragraph 12 of the affidavit, the agent stated that "they also specifically discussed the soap box used to deliver the cocaine. Bolden and Eberhardt then discussed the arrangements for another two kilo deal." A review of the actual tape recordings evidence no such discussion.

**FOURTH DEFECT: ADDITIONAL PROSECUTORIAL MISCONDUCT**

The Fifth Amendment to the United States Constitution guarantees that no person shall be deprived of life, liberty, or property without due process of law. Implicit in the concept of ordered liberty is the principle that the government may not knowingly use false evidence, including false testimony, to obtain a tainted conviction. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173 (1959) Further, the Government may not overcharge an individual, nor vindictively seek a conviction of an individual, when the evidence does not suggest such a charge. The underlying philosophy in this

-10-

regard is that "the United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. Stricker v. Greene, 527 U.S. 263, 281, 119 S.Ct. 1936, 1948 (1999), quoting Berger v. United States, 295 U.S. 78,88, 55 S.Ct. 629 (1935)

In light of *Napue* and its progeny, courts throughout the nation have held that a Fifth Amendment violation of general due process can be the basis to overturn a conviction, but it should be applied only in those instances where the conduct of the government reaches a demonstrable level of outrageousness. United States v. Kelly, 707 F.2d 1460 (C.A.D.C.1983); *also, see*, Dowling v. United States, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990). The test to determine if due process has been met is whether, under the circumstances, the accused received a fair trial. United States v. Baca, 687 F.2d 1356 (10th Cir.1982). Thus, when determining whether an error at the trial court violated due process, the Court must make a determination that evidence in the case was "so prejudicial in the context of the proceedings as a whole that [the defendant] was deprived of the fundamental fairness essential to the concept of due process." Scrivner v. Tansy, 68 F.3d 1234, 1239_40 (10th Cir.1995) (citations and internal quotation marks omitted), *cert. denied*, 516 U.S. 1178, 116 S.Ct. 1277, 134 L.Ed.2d 223 (1996). Such factors include knowingly using perjured testimony.

Once again, it cannot be understated that use of perjured testimony deprives both the accused and the proceedings themselves with the air of fundamental fairness requisite in all criminal proceedings. *See*, Blackmon v. Johnson, 145 F.3d 205 (5th Cir. 1998)(prosecution's knowing failure to correct false testimony violates due process if the false testimony reasonably could have affected

-11-

the judgment of the jury); <u>United States v. Haese</u>, 162 F.3d 359 (5th Cir. 1998)(A defendant's conviction must be reversed on due process grounds where the Government knowingly elicits, or fails to correct, materially false statements from its witnesses.)

The standard for addressing perjured testimony which leads to a conviction is clear and quite representative of the goals of the Fifth Amendment to the U.S. Constitution. "The dignity of the United States Government will not permit the conviction of any person on tainted testimony." <u>Mesareosh v. United States</u>, 352 U.S. 1 (1956) In no clearer terms, a criminal defendant is denied due process when perjured testimony is knowingly used or if known untrue testimony goes uncorrected. *See* <u>Napue v. Illinois</u>, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). This is true regardless of whether the prosecution solicited testimony it knew to be false or simply allowed such testimony to pass uncorrected. *See* <u>Giglio v. United States</u>, 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); <u>Napue</u>, 360 U.S. at 269, 79 S.Ct. 1173.

The existence of false testimony violates the Fifth Amendment. The prejudice to the Petitioner where such testimony materially impacted the grand jury's deliberations is quite obvious. And, the knowing use of such false testimony by the Government substantially affected due process rights.

In addition to the false and conflicting affidavits, reports, and testimony of the DEA agents, the Government engaged in improper conduct throughout the course of the grand jury proceedings and the trial. First, the prosecutors sought to gain benefit from the perjury during the trial. And, the Government also sought improperly to bolster the credibility of Bolden by not calling him as a witness yet bringing in his actions and testimony through the DEA agents. Further, the government, in closing, asked the jury to consider drug amounts not charged in the indictment nor proven at trial.

-12-

The Government did not present the full tape recording and its proper transcript to the grand jury or at trial. And, as an evidentiary hearing would show, the government used closing arguments to mislead the jury in believing that the uncorroborated post arrest statements of the Petitioner provided sufficient evidence, beyond a reasonable doubt, of the level of drugs involved in this alleged conspiracy. United States v. Taylor, 471 F.3d 821 (7th Cir. 2006)(inadmissible hearsay cannot support the findings of drug quantity)

To establish prosecutorial misconduct, a movant "must show that the remarks were improper and that they prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." United States v. Adam, 70 F.3d 776, 780 (4th Cir.1995) (internal quotation marks omitted). "Improper remarks during closing argument do not always mandate retrial. 'The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)), cert. denied 113 S.Ct. 2966, 125 L.Ed.2d 666 (1992). The test for reversible prosecutorial misconduct generally has two components: that (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Brockingham, 849 F.2d 872, 875 (4th Cir.1988)   In addition to undermining the propriety of the prosecution's conduct in this case, under Brockingham, the court must consider whether the conduct in this case "prejudicially affected the defendant's substantial rights so as to deprive the defendant of a trial." Brockingham, 849 F.2d at 875. A number of factors should be considered when evaluating the issue of prejudice to the defendant:(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were

isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters. United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir.1983), *cert. denied*, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984) The issue of "[w]hether improper argument by government counsel has so prejudiced the trial process as to require reversal must be gauged from the facts of each trial." *Id*. at 1051.

This court has already held that the Petitioner did not get a fair trial and this repeated conclusion lies with the prosecution and its improper conduct. See Judge Zagel's March 21, 2003 memorandum opinion and order granting a new trial. It is the Petitioner's argument that all of this conduct by the government prejudiced the fairness, the propriety, and the fundamental rights of the Petitioner during the grand jury proceedings and the trial, thus requiring a reversal of his conviction.

**III.    THE PETITIONER'S RIGHTS TO A JURY TRIAL AND DUE PROCESS OF LAW WERE VIOLATED WHEN HE WAS PUNISHED UPON FACTS THAT WERE NOT PROVED BEYOND A REASONABLE DOUBT; IF THE SENTENCING GUIDELINES ALLOW THE DISTRICT COURT TO PUNISH THE PETITIONER UPON SUCH FACTS, THE GUIDELINES ARE UNCONSTITUTIONAL AS APPLIED.**

The United States Constitution guarantees each defendant a trial by jury wherein no punishment is imposed until a jury determines the defendant guilty of particular conduct beyond a reasonable doubt. See U.S. Const. Amends. V, VI. At odds with that system is the Sentencing Reform Act of 1984, which sets up a system that appears to allow a district court to sentence or punish a defendant based upon conduct that is not admitted or proved beyond a reasonable doubt.

-14-

(Title II of The Comprehensive Crime Control Act of 1984); U.S.S.G. Chapter 1, Part A, intro., comment (3).

In addition to a base sentencing range established by reference to the jury verdict alone, the guidelines prescribe enhanced sentencing ranges based on sentencing factors that are determined by a judge after trial, by a preponderance of the evidence. U.S.S.G. Chapter 1, Part A, introduction, comment (2) and (4)(a). In his dissent in <u>Harris v. United States</u>, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002), Justice Thomas reminded us that due process requires that every fact necessary to constitute a crime must be found beyond a reasonable doubt by a jury if that right is not waived. Id. at 2424 (Thomas, J., dissenting), citing *In re Winship,* 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). Society has long recognized a necessary link between punishment and crime. Harris, 122 S.Ct. at 2424 (Thomas, J., dissenting), citing Apprendi v. New <u>Jersey</u>, 530 U.S. 466, 478, 120 S.Ct. 2348 (2000) ("The defendant's ability to predict with certainty the judgment from the face of the felony indictment flowed from the invariable linkage of punishment with crime"). "Why, after all, would anyone care if they were convicted of murder, as opposed to manslaughter, but for the increased penalties for the former offense, which in turn reflect the greater moral opprobrium society attaches to the act?" <u>Harris</u>, 122 S.Ct. at 2424 (Thomas, J., dissenting).

If a statute annexes a higher degree of punishment based on certain circumstances, exposing a defendant to that higher degree of punishment requires that those circumstances be charged in the indictment and proved beyond a reasonable doubt. *Apprendi*, 530 U.S. at 480, quoting J. Archbold, Pleading and Evidence in Criminal Cases 51 (15th ed. 1862). For example, § 1B1.3, gives an expansive interpretation of "Relevant Conduct." Under it, ordinary crimes such as perjury, subornation of perjury, escape, and obstruction of justice arguably become "relevant conduct" or

"sentencing factors." According to Guidelines theorists, these semantics are enough to exempt such criminal conduct from the provisions of the 5th and 6th Amendments to the U.S. Constitution even though persons can be sent to prison for months and even years by proving with "reliable information" (not trial quality evidence) to a judge (not a jury) that it is more probably true than not true (not "beyond a reasonable doubt") that the defendant committed such "relevant conduct" (not crime).

But the sentencing guidelines cannot supersede the United States Constitution. The guidelines should not be used to accomplish an "end-run" around the fundamental right to trial by a jury and to usurp the role of the jury. If the jury finds a defendant guilty of a range of drug amount that could be as low as five kilograms, the district court should not be permitted to use the sentencing guidelines to ignore that verdict, take the jury's role, find responsibility for a higher drug amount, and punish based upon that extra-jury determination at a standard lower than proof beyond a reasonable doubt. See Anderson v. Fuller, 455 U.S. 1028, 1032, 102 S.Ct. 1734 (1982) (Burger, C. J., dissenting) (nothing that federal courts should not usurp the function of a jury in finding facts). Recently, the Supreme Court has begun to realize the fundamental defects in way our justice system determines sentences for criminal defendants in a series of decisions. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In Ring v. Arizona, 536 U.S. 584 (2002), the Supreme Court clarified and reaffirmed this rule. The *Ring* holding is straightforward and clear-cut: The *Apprendi* rule applies to any aggravating fact necessary to expose a defendant to punishment beyond an otherwise mandatory statutory limit. *Id.* As recently observed by the United States District

Court for the district of Massachusetts regarding the Sentencing Guidelines, "the Sixth Amendment guarantee of trial by jury has been eroded as never before in the history of our nation, while the institutional judiciary complacently slips into forms of expression and modes of thought that unconsciously reinforce the Department agenda in a powerfully Orwellian way. United States v. Green, 2004 U.S.Dist. LEXIS 11292, *13 (D.Mass June 18, 2004).

After Apprendi, the various courts throughout the country assumed the term "statutory maximum" referred to in Apprendi and Ring, was the maximum sentence set forth under the statute listed in the indictment. The courts have assumed that the term "statutory maximum" does not apply to the various sentencing thresholds established under the federal sentencing guidelines. The Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) changes that and indicates that the courts have been wrong, holding that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. * * * When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment." Blakely v. Washington, 124 S.Ct. at 2537(emphasis in original) The Blakely decision not only clarifies what was meant by the term "statutory maximum," but also calls into question the constitutionality of current sentencing practices in federal court. The Court noted that the rule announced in Apprendi reflected two longstanding tenets of common-law criminal jurisprudence: "that the truth of every accusation against the defendant should afterwards be confirmed by a unanimous [jury verdict], and that an accusation which lacks any particular fact which the law makes essential to the punishment is ... no accusation within the requirements of the common law and it is no accusation in reason." (cites omit) Id. at *10. The Court then noted the

principle in American jurisprudence that "'every fact which is legally essential to the punishment' must be charged in the indictment and proved to a jury." *Id.*

The decision in <u>Blakely</u> was further bolstered by the recent decision issued in <u>United States v. Booker</u>, 2005 U.S. LEXIS 628 (2005). In <u>Booker</u>, the Court ruled that the federal Sentencing Guidelines were not mandatory in issuing federal sentences, but are to be used merely as an advisory tool. *Id.* at *7. The decision flowed from Justice Stevens' worry that as sentencing enhancements became greater, "the jury's finding of the underlying crime became less significant." *Id.* at *33. As such, the Sixth Amendment right to a jury trial was being usurped, requiring change in order to preserve "Sixth Amendment substance." *Id.* at *34. Furthermore, the court again reiterated its commitment to the ideal that any fact other than a prior conviction which is necessary to support a sentence exceeding the statutory maximum authorized by the jury's finding must be proved to a jury beyond a reasonable doubt. *Id.* at *45-6. In addition to the application of these cases to statutory maximum circumstances, the statutory mandatory minimum sentence required to be imposed must be established beyond a reasonable doubt. *See,* <u>United States v. Darmand</u>, 3 F.3d 1578 (2nd Cir. 1993)(the statutory mandatory minimum sentence established under 21 U.S.C. 841(b)(1) applies only to conduct which actually results in a conviction and not to Guideline defined "relevant conduct")

At Petitioner's sentencing, Judge Zagel, who would later express concerns over the fairness of the trial itself and would grant a new trial, likewise expressed his concern over the determination of drug quantity.

> The only part that I am willing to credit is that he did deal in the drugs and dealt with them over a period of time. But from the words alone, ***I am reluctant to conclude there is a particular quantity involved***, because I have to look elsewhere to find the quantity. The place I look to is the two actual kilos. . .(emphasis added)

Sentencing Transcript, April 22, 2005, page 37

Nevertheless, based upon the jury's determination of five kilograms of drugs, based on facts undisclosed and undetermined, the judge imposed a sentence based on a level thirty-two and a criminal history category two. Imposing a sentence of 135 months, Judge Zagel refused to depart down, even to the statutory minimum, because "Congress has quite clearly dictated" that a downward departure is not authorized. *Supra,* page 40 In fact, and in law, this sentence is incorrect.

The only evidence as to drug quantity is the two kilogram transaction for which the jury found the that Petitioner had no criminal liability. Anything more can only be deduced, implied, or guessed upon both for the jury's special verdict or for the judge's determination. Based on Judge Zagel's expressed doubt as to drug quantity and his (incorrect) belief that he had no choice but to follow Congress' dictates, Petitioner's sentence was imposed improperly and contrary to the Constitution.

### IV. PETITIONER'S CONVICTION AND SENTENCE WERE TAINTED AS PETITIONER DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE UNDERLYING CRIMINAL PROCEEDINGS.

The Sixth Amendment to the United States Constitution insures effective assistance of legal representation to all criminal defendants. "The right to competent counsel must be assured every man accused of crime in Federal court." State of Union Address, John F. Kennedy, January 14, 1963, U.S. Code Cong. and Admin. News, 2990. An abridgment of this core, constitutional right meets the "error of constitutional magnitude" outlined in <u>Addonizio</u>.

To see whether counsel has fallen below the minimum standard needed for effective assistance of counsel under the Sixth Amendment to the Constitution, a two-prong test must be met.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court outlined this two-prong test for ineffective assistance of counsel. A petitioner must demonstrate that counsel's performance at sentencing fell below an objective standard of reasonableness, and must show a "reasonable probability" that, but for counsel's errors, the results of the proceedings would have been different. *Id.* at 688, 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome," and it is a standard less than proof by a preponderance of the evidence. Strickland, 466 U.S. at 694.; Loyd v. Whitley, 977 F.2d 149 (5th Cir. 1992)(The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.)

For all of the failures of Petitioner's counsel, this Court must decide in light of all the circumstances facing counsel, whether his conduct fell within the wide range of professionally competent assistance expected of an attorney. Huynh v King, 95 F.3d 1052,1056 (11th Cir. 1996); Strickland, *supra*, 466 U.S. at 690. The Petitioner must prove that counsel's performance was unreasonable under prevailing professional norms, and that the challenged actions or omissions were not sound strategy. Strickland, 466 U.S. at 688-89

### FAILURE TO OBJECT TO ORIGINAL DETENTION

One of the key actions in any criminal arrest is fidelity to the parameters of the Fourth Amendment to the federal Constitution. Justice Frankfurter once noted that "[i]t is a fair summary of history to say that the safeguards of liberty have frequently been forged in controversies involving not very nice people," United States v. Rabinowitz, 339 U.S. 56, 69 (1950) (dissenting opinion), and nowhere is this observation more apt than in the area of the Fourth Amendment, whose words have necessarily been given meaning largely through decisions suppressing evidence of criminal activity.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . .", begins the Fourth Amendment. However, when the Government utilizes an informant, this right appears to become expendable.

In the case at bar, DEA Agents Glynn and Foley wired a transmitter microcassette to Charles Bolden and had him arrange for a meeting with the Petitioner. The meeting occurred in the Petitioner's car. Upon a pre-arranged signal, the meeting would end and the agents were to arrest the Petitioner for possession of cocaine. Everything was worked out with the informant as it had been in countless other operations, save for one detail. Typically, the prearranged signal is a clear matter that informs law enforcement of the presence of contraband or criminal activity. And while courts have consistently held that the warrantless entry into a house is presumptively unreasonable, Brigham City v. Stuart, 547 U.S. 398, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006), it has also been consistently held as is axiomatic that "[a] warrantless arrest . . . must be supported by probable cause." United States v. Navarro, 90 F.3d 1245, 1254 (7th Cir. 1996)

Probable cause can be justified by the information passed on to police by confidential informants. See, United States v. Medina, 944 F. 2d 60 (2nd Cir. 1991) However, when it is, such as in this case, the signal from the informant to the police must be clear, unique, and directly related to what the informant sees. In this case, ths signal was pedestrian and an act that would have occurred regardless of the existence or non-existence of criminal activity to support probable cause. The signal was when they physically exited the automobile and went to the back door of the car.

No probable cause nor exigent circumstances existed to seize the Petitioner, yet the DEA agents held him, arrested him, and interrogated him, all without a warrant. Unfortunately, counsel failed to make this argument properly and cogently to the trial court. Counsel failed to seek an

evidentiary hearing to explore the circumstances of the warrantless arrest. In this regard, counsel fell below the standard to which Strickland addresses.

**FAILURE TO DEFEND CONSPIRACY CHARGE**

In serving the needs of Petitioner, counsel was ineffective in not moving the court for specific defensive demands associated with the conspiracy charge. First of all, as indicated above, the indictment was vague regarding the conspiracy, so vague that no objective defendant could have defended the allegation. *See*, United States v. Cecil, 608 F.2d 1294, 1296 (9th Cir. 1979)(The purpose of an indictment is to provide the accused with a sufficient description of the offenses charged so that the accused will be able to prepare a defense.) Second, trial counsel failed, in its focused defense to address the substantive drug possession charge, to defend the conspiracy charge. Counsel failed to place the conspiracy in context, failed to obtain limiting jury instructions, and failed to address the allegations in opening and closing arguments.

In the context of failing to adequately put on a defense, whether counsel's omission served a strategic purpose is a pivotal point in Strickland and its progeny. *See*, Strickland, 466 U.S. at 691; and Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (emphasis on fact that counsel's failure "was not based on 'strategy,' but on counsel's mistaken beliefs..."). "The crucial distinction between strategic judgment calls and plain omissions has echoed in the judgments of this court." Loyd, *supra*. *See*, Profitt v. Waidron, 831 F.2d 1245, 1249, (5th Circ. 1987) (where counsel's omission presented "no advantage" to the defense, the court refused to accord "our usual deference to tactical decisions")

It is clearly unreasonable and below the standard of the profession for a defense attorney not to put on a defense when required to do so by an indictment allegation and when asked to do so by his client.

## FAILURE TO INVESTIGATE

As part of counsel's duty to defend, he maintains a duty to fully investigate the case so he can examine and cross-examine witnesses, investigate and raise valid defenses, and investigate the true nature of the alleged conduct and present expert testimony on the issue. Failure to do so constitutes ineffective assistance of counsel. See, Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)

As the Supreme Court recognized in Strickland, "counsel bears a duty to make a 'reasonable' investigation of the law and facts in his client's case." Strickland, 466 U.S. at 691. Additionally, the ABA Standards Relating to the Administration of Criminal Justice provide:

> It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty.
> Standard 4-4.1.

It is well established that a defendant's right to effective assistance of counsel confers a duty on counsel to conduct an adequate pre-trial investigation. Our sister circuit has addressed the matter more than most. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992). "[W]hen a lawyer fails to conduct a substantial investigation into any of his client's plausible lines of defense, the lawyer

has failed to render effective assistance of counsel." *Id.* at 1262-63. "Pre-trial preparation, principally because it provides a basis upon which most of the defense case must rest, is, perhaps, the most critical stage of a lawyer's preparation." House v. Balkcom, 725 F.2d 608, 618 (11th Cir. 1984). "Failure to investigate evidence that would be helpful to the defense is also an indication of ineffective assistance of counsel." *Id.* A lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course. Rogers v. Zant, 13 F.3d 384, 387 (11th Cir. 1994). Such determinations are allowable because "good advocacy requires the winnowing of some arguments in favor of stressing others. . ." *Id.* at 388.

It is a defense attorney's responsibility to prepare for any key witnesses to be examined at trial. See, Aldrich v. Wainwright, 777 F.2d 630 (11th Cir. 1985)(counsel was ineffective in failing to take the deposition of the State's key witness) Such a preparation, especially in light of the nature of this case, was non-existent. One of the prime examples of this deficiency was counsel's preparation for and taking the testimony of Charles Bolden. While the Government had physical control over this witness, counsel could have demanded his presence, his deposition, or, then, after attempting to first obtain direct testimony from Bolder, a missing witness jury instruction.

In the instant case, counsel rendered ineffective assistance when he (1) failed to present before the jury readily available testimony crucial to undermining the Government's case, (2) failed to allow the Petitioner to testify on his own behalf, (3) failed to prepare to cross-examine the Government's key witnesses, and (4) failed to interview and call other crucial defense witnesses (such as Eric Burgess). The Government's strategy was to gain a conviction at all costs even to the point of knowingly misrepresenting the facts. Such distortion by the Government taken together with an already challenging case created a special need to provide the jury with a defense-oriented

-24-

explanation of the government informant, the need to cooperate at all costs, and the true understanding of the relationship between Bolden and the Petitioner.

### FAILURE TO OBJECT TO TAPED CONVERSATIONS

The case against the Petitioner was based entirely on ambiguous tape recordings (and a disputed confession.) The tapes only established the petitioner knew that Bolden was a drug dealer and that Bolden had told the Petitioner about his delivery of a soap powder box, as well as his encounter with the DEA. These taped conversations did not address anything else.

It is undisputed that the transcripts introduced at trial contained material inaccuracies. Rather than object to the introduction of the tapes or their transcripts, counsel used the tapes as a basis for his motion for a new trial. Nevertheless, this failure to object, in addition, was an unreasonable act even noted by the appellate court when the case was under judicial review. The jury was given both the tapes and the inaccurate transcripts, conflicting matters of evidence that confused them and led to an inconsistent verdict. The jury, without any objection from counsel, did not even have the opportunity to listen to all of the recordings.

The tapes were very difficult to hear, as this Court will remember. In sum, the tapes presented no incriminating conversations but should have been limited in its use by the jury. At sidebar, counsel for the Petitioner objected to the tapes on grounds of inadequate foundation. This poor use of the rules of evidence was clearly addressed when the trial judge ruled that the tapes would be admitted under the theory of "direct identification." See Trial Transcript, Tr. 63 Nevertheless, the Circuit Court of Appeals found that no proper objection by the Petitioner was made and preserved for appellate review. Such a failure materially prejudiced the Petitioner.

## FAILURE TO OBJECT TO HEARSAY TESTIMONY

The DEA agents consistently introduced hearsay testimony (important for the Government as it was too precarious to put Bolden on the stand), testimony that was incorrect, tainted the proceedings, and forestalled the Petitioner from directly confronting his accuser. Whether it be hearsay testimony about alleged prior debts or hearsay testimony about a prior drug transaction, these alleged facts were not direct, were presented for the truth of their matter, and materially prejudiced the Petitioner. Counsel fell below the standard established in Strickland when he failed to object to the introduction of these statements.

## FAILURE TO OBJECT TO PROSECUTORIAL ACTS OF MISCONDUCT

While a collection of prosecutorial acts of misconduct are presented elsewhere in this pleading, additional acts include:

Improper vouching for Government witness.[2]

Improper expert witness testimony as to drug dealings.

Improper expert witness testimony as to code language between drug dealers[3]

Government's refusal to make Charles Bolden available for interview or deposition

---

[2]The prosecution repeatedly, and improperly vouched for Bolden in its closing arguments. Defense counsel failed to object appropriately.

[3]Expert witness testimony regarding code language that was actually predicated on plain language was false and yet repeated by prosecution as fact. When testimony that "battery was low" was presented, in was given as fact: the cell phone battery was low. Conjuring up fictional codes about drugs and drug supplies lacked foundation, was misconduct, and counsel failed to object appropriately.

Untruthful statements to the court as to Bolden's status as a cooperating witness

Improper jury instructions or omissions from instructions

Failure to explain to the jury the fact that Bolden was not a conspirator.

Failure to provide complete tape recordings in their original form to the jury.

None of these acts of misconduct elicited objections from counsel and all tainted the fairness of the trial court proceedings. An evidentiary hearing would provide a proper forum for outlining the full extent of misconduct and counsel's failure to object.

### FAILURE TO APPEAL FOURTH AND FIFTH AMENDMENT VIOLATIONS

Under the Sixth Amendment, a criminal defendant has the right to effective assistance of counsel on appeal. It is appellate counsel's constitutional duty to seek judicial review of errors or decisions of the trial court that should be challenged.. And while possible errors by counsel at the appellate level are generally presumed to be tactical in nature, United States v. Ashimi, 932 F. 2d 643 (7th Cir. 1991), this presumption is due to the necessity of finding evidence outside of the record to support a claim of deficiency in counsel's representation. When that evidence is clear from the record, this presumption is easily rebuttable. Underlying the entire evolution of Bolden's arrest, his cooperation, and his affirmative decision to suggest (unsubstantiated ) that Petitioner was involved

-27-

in criminal activity is the fundamental premise of our constitutional restrictions on warrantless seizures.

As indicated above, Petitioner was arrested and held without liberty without a warrant and without probable cause. This Fourth Amendment violation was not raised on appeal by counsel. Further, the sufficiency of the indictment, as indicated above, the sufficiency of the evidence to support a conspiracy claim, and other constitutional errors were absent from appellate counsel's brief seeking judicial review. *Cf.,* Shell v. United States, 448 F.3d 951 (7th Cir. 2006)

**CUMULATIVE ACTS OF OMISSION AND COMMISSION**

Courts throughout the nation have confirmed that a failure to meet the minimum standard of Strickland can be met through the aggregate of cumulative acts of omission and commission by counsel. *See*, Lawhorn v. Allen, 519 F.3d 1272 (11th Cir. 2008)(determination is based on a review of the entire postconviction record as a whole and with consideration of all cumulative evidence) When all of the foregoing are added to counsel's refusal to defend the conspiracy charge, refusal to allow Petitioner to testify, refusal to prepare and investigate the case, failure to make any objections during the Government's closing arguments, and failure to preserve objections at the trial level for appellate review, it is clear and clearly prejudicial that Petitioner was burdened with ineffective assistance of counsel.

-28-

V.     **PETITIONER IS ENTITLED TO A VACATION OF HIS SENTENCE AS HE IS ACTUALLY INNOCENT**.

The Petitioner is actually innocent. To be sure, far too many defendants make such claims, both prior to adjudication and while incarcerated. However, the present case is one of those rare examples of an innocent individual being found guilty by association and without any independent evidence elicited at trial.

There was no physical evidence in this case. The only drugs seized were those of Mr. Bolden and were shown at trial to have nothing to do with the Petitioner. The jury acquitted the Petitioner of any substantive possession charge. The Petitioner has not drugs. He was never found to have possessed any tools of the drug trade: no cash, no guns, no scales, no baggies, no cutting agents, no unexplained wealth. Finally there has been not one single witness who testified that he bought or sold drugs . Not one single witness came into open court to testify that they saw the Petitioner with drugs. No one single witness observed illegal activity; The only evidence against the Petitioner was an ambiguous tape recorded statement and an alleged and unsubstantiated statement wrangled out of him, which statement reinforces the position of lack of knowledge and lack of any conspiracy or agreement between parties.  The record directly reflects this as well as the totality of the case.

Notwithstanding the global accusations made by the Government in its indictment, no proof was presented to reflect that Petitioner conspired with anyone for the distribution of

-29-

cocaine. The ultimate safety net in our judicial system is for the trial judge to dismiss such a case when the evidence, or lack thereof, indicates no violation of our criminal laws. Judge Zagel attempted this when he granted a new trial as he saw that the proceedings were not fair. His intercession for want of due process was unfortunately short-lived.

There is an objective absence of any testimony or evidence associating the Petitioner with any illegal activity. There is no evidence that the Petitioner conspired with anyone, except for an alleged confession that was coerced and contrary to other facts that government proffered to the court. There is no evidence that the Petitioner was engaged in a conspiracy to further some illegal conduct. In order to prove a criminal conspiracy, evidence must be presented of an agreement between two or more persons formed for the purpose of committing a crime. P. Marcus, The Prosecution and Defense of Criminal Conspiracy Cases § 1.03 (1985). See, e.g., United States v. Saenz, 747 F.2d 930, 937 (5th Cir.1984), reh'g denied, 752 F.2d 646, (en banc ) (1985). No such evidence was presented because no such evidence exists.

Petitioner was not convicted because he lied, cheated, or stole. He was not convicted because he possessed drugs or tried to possess drugs. He had no indicia of drug activity. Petitioner was indicted and then convicted because the Government needed a conviction, regardless of the facts, or the law.  The Petitioner is not guilty because he did not commit any crime and no evidence that he did was ever presented to the jury.

VI. **PETITIONER IS ENTITLED TO AN EVIDENTIARY HEARING ON THESE ISSUES.**

The Petitioner contends that, at minimum, he is entitled to an evidentiary hearing on the matters raised in the instant motion. The Petitioner submits that resolution of the issues raised will require an examination of evidence beyond the scope of the record.

In the case of <u>United States v. Smith</u>, 915 F2d 959 (5th Cir. 1990), the Fifth Circuit stated the national consensus, holding that "If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing." *Id*. at 964 Further, where a due process claim is alleged, a hearing should be held where the record is unclear on the facts underlying the claim. <u>Blackmon v. Scott</u> 22 F.3d 560,567 (5th Cir. 1994); *also see*, <u>United States v. Myers</u>, 892 F.2d 642 (7th Cir. 1990) and <u>Kafo v. United States</u>, 467 F.3d 1063 (7th Cir. 2006) In the present case, the Petitioner has raised several claims, including ineffective assistance of counsel, which rely on facts occurring outside of the record. Further, if the Court takes the Petitioner's allegations as true, the Petitioner is entitled to relief. Therefore, at a minimum, a hearing should be held on these claims.

The Petitioner submits that the verified claims he has raised in the present petition are not frivolous. Also, the scope of the review necessary to resolve these issues of ineffective assistance of counsel necessarily go beyond the record. Therefore, the Petitioner suggests that a studied

-31-

examination by this Court could best occur in an evidentiary hearing. The Petitioner requests that this Court, therefore, order an evidentiary hearing to consider the petitioner's claims for relief.

## CONCLUSION

WHEREFORE, in consideration of the foregoing, the Petitioner prays this Court to issue an order vacating the conviction and sentence previously imposed due to the errors of constitutional magnitude outlined herein. In the alternative, Petitioner requests an evidentiary hearing at which time evidence further supporting the abridgment of his constitutional protections may be submitted to this Court. The Supreme Court stated in <u>Kyles v. Whitley</u>, *Id*. that the type of issues, such as those raised herein, go to the very core of due process, the very essence of Constitutional fairness. Is there a reasonable probability that but for these errors there would have been a different result, asked Justice Souter in the Kyles case? In the present case, the answer is clearly yes. The Government's actions, coupled with the Petitioner's counsel, served to insure that Petitioner did not receive a fair trial, a trial resulting in a verdict worthy of confidence. Respectfully submitted,

By:    /s/ Robert A. Ratliff
       Robert A. Ratliff, Esq.
       Attorney for Petitioner
       713 Dauphin Street
       Mobile AL 36602
       Tel:  251-438-2250

June 12, 2008

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing Motion appended thereto has been sent this 12

day of June, 2008 by Electronic Delivery to:

**Amarjeet Singh Bhachu**
United States Attorney's Office (NDIL)
219 South Dearborn Street
Suite 500
Chicago, IL 60604
(312) 353-5300
Email: amarjeet.bhachu@usdoj.gov


By:    <u>/s/ Robert A. Ratliff</u>
       Robert A. Ratliff, Esq.
       Attorney for Petitioner
       713 Dauphin
       Mobile AL 36602
       Tel:  251-438-2250